Essie D. WILLIAMS, Appellant,

v.

CRUM & FORSTER COMMERCIAL IN-SURANCE, United States Fire Insurance Company, Christy Ramsey, Appellees.

No. 05–94–01980–CV.

Court of Appeals of Texas, Dallas.

Nov. 28, 1995.

Richard G. Danner, Jr., Bruce E. Longenecker, Dallas, for appellant.

Greg Winslett, Strasburger & Price, L.L.P., James K. Peden, III, Strasburger & Price, P.C., Dallas, for appellees.

Before MORRIS, WHITTINGTON, and JAMES, JJ.

## OPINION

WHITTINGTON, Justice.

Essie D. Williams appeals a summary judgment granted in favor of Crum & Forster Commercial Insurance, United States Fire Insurance Company, and Christy Ramsey (collectively, "appellees").[1] In four points of error, Williams contends the trial court erred in granting summary judgment because fact issues existed on (1) whether appellees conducted a reasonable investigation of Williams's claim for death benefits, (2) whether appellees had a reasonable basis for denying Williams's claim for death benefits, (3) whether appellees' conduct was extreme and outrageous, and (4) whether Ramsey was liable in the capacity in which she was sued. For the reasons set forth below, we affirm

the trial court's judgment in part and reverse and remand it in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 13, 1992, Nathaniel Williams was killed in an automobile accident while working for JRJ Paving, Inc. At the time of Nathaniel's death, JRJ Paving had a worker's compensation insurance policy with U.S. Fire. The policy provided accidental death benefits to beneficiaries of employees killed while in the course and scope of their employment. Following Nathaniel's death, U.S. Fire received a First Report of Injury from JRJ Paving which identified Nathaniel's spouse as "Lessie." Thereafter, U.S. Fire learned that another woman, Essie Williams, had contacted JRJ Paving claiming to be entitled to benefits as Nathaniel's spouse.

U.S. Fire retained Linda Perkins, an independent investigator, to take recorded statements from Williams and Lessie Voyd. The statements revealed that (1) Williams married Nathaniel in 1957, (2) the two had separated in 1978 but were never divorced, (3) Williams and Nathaniel had lived apart since 1978, and (4) Nathaniel had been living with Lessie Voyd continuously since 1978. Christy Ramsey, a U.S. Fire claims adjuster, reviewed the statements taken by Perkins to ascertain who was entitled to benefits under the policy.

Based on the information obtained during the interviews, Ramsey concluded Williams was not entitled to benefits because she had abandoned Nathaniel for more than a year immediately preceding his death. Ramsey concluded Lessie was entitled to benefits under the policy, and U.S. Fire thereafter began making weekly benefit payments to Lessie. Almost a year later, Williams filed a claim for benefits with the Worker's Compensation Commission ("Commission"). When Ramsey received Williams's claim, she sent a notice of disputed claim to Williams's attorney.

A Benefit Review Conference was held on October 14, 1993. A few months later, a

---

1. Crum & Forster is an assumed name of U.S. Fire. The two are not distinct entities. In this    opinion, we refer to Crum & Forster and U.S. Fire collectively as "U.S. Fire."

Contested Case Hearing was held. The contested case hearing officer agreed with U.S. Fire that Williams was not entitled to benefits under the policy. However, the officer disagreed with U.S. Fire's conclusion that Lessie was entitled to benefits. The officer ordered U.S. Fire to begin making payments to the Subsequent Injury Fund.[2] Williams appealed the officer's decision to the Worker's Compensation Appeals Panel. The appeals panel reversed, concluding Williams was entitled to benefits under the policy. The appeals panel ordered U.S. Fire to begin making weekly benefit payments to Williams.

In March 1994, Williams filed suit against U.S. Fire and Christy Ramsey. In her amended petition, Williams asserted causes of action against appellees for (1) breach of the duty of good faith and fair dealing, (2) violations of the Deceptive Trade Practice–Consumer Protection Act ("DTPA") and the Insurance Code, and (3) intentional infliction of emotional distress. Appellees filed a motion for summary judgment, contending they were entitled to judgment as a matter of law because (1) appellees had a reasonable basis for denying Williams's claim, (2) appellees did not violate the DTPA or Insurance Code, and (3) appellees' conduct was not extreme or outrageous. Ramsey also moved for summary judgment on the additional ground that she was not liable in the capacity in which she was sued. The trial judge held a hearing on appellees' motion. After considering the evidence and arguments of counsel, the trial judge granted appellees' motion. This appeal followed.

### STANDARD OF REVIEW

■ The standard for reviewing a summary judgment is well established:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

2. In deciding whether a disputed material fact issue exists precluding summary judgment, we take evidence favorable to the nonmovant as true.

3. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.

*See Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ To prevail on summary judgment, a defendant as movant must either (1) disprove at least one element of each of the plaintiff's theories of recovery or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Hoover v. Gregory,* 835 S.W.2d 668, 671 (Tex.App.—Dallas 1992, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

■ The purpose of the summary judgment rule is not to provide a trial by deposition or affidavit. Rather, the purpose of the rule is to provide a method of summarily ending a case that involves only a question of law or no genuine issue of fact. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962); *Port Distrib. Corp. v. Fritz Chem. Co.,* 775 S.W.2d 669, 670 (Tex.App.—Dallas 1989, writ dism'd by agr.). The rule is not intended to deprive litigants of their right to a full hearing on the merits of any real fact issue. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

### CLAIMS AGAINST RAMSEY

In her fourth point of error, Williams contends the trial judge erred in concluding that Ramsey was not liable in the capacity in which she was sued. We conclude Williams has waived this point on appeal.

■ Rule 74(f) of the rules of appellate procedure requires an appellant to include in her brief "such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." TEX. R.APP.P. ·74(f). Failure to cite legal authority

---

**2.** Payments are made to the Subsequent Injury Fund when there are no legal beneficiaries enti-

tled to benefits. *See* TEX.LAB.CODE ANN. § 403.007 (Vernon Pamph.1995).

in support of a point of error constitutes a waiver of the point. *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 204 (Tex.App.—Dallas 1993, no writ); *D/FW Commercial Roofing Co., Inc. v. Mehra,* 854 S.W.2d 182, 189 (Tex. App.—Dallas 1993, no writ). Because Williams failed to cite any authority in support of her fourth point of error, we conclude she has waived this point on appeal.

■ Appellees moved for summary judgment in favor of Ramsey on multiple grounds. Because the trial judge did not specify the basis for his ruling, Williams was required to show that each of the independent grounds asserted in support of summary judgment was insufficient to support summary judgment. *See Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 256 (Tex.App.—Dallas 1993), *writ denied per curiam,* 889 S.W.2d 266 (1994). Because Williams has not properly challenged each of the independent grounds asserted, we must affirm the summary judgment granted in favor of Ramsey. We turn now to consider Williams's claims against U.S. Fire.

## DUTY OF GOOD FAITH AND FAIR DEALING

In her first and second points of error, Williams contends the trial court erred in granting summary judgment on her breach of the duty of good faith and fair dealing claim. Williams contends the trial court erred in granting summary judgment on this claim because fact issues existed on (1) whether appellees conducted a reasonable investigation before denying her claim for benefits, and (2) whether appellees had a reasonable basis for denying her claim. We agree.

■ An insurer has a duty to deal fairly and in good faith with its insureds. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). This duty arises from the "special relationship" created by the contract between the insurer and the insured. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 283 (Tex.1994); *Arnold,* 725 S.W.2d at 167. The "special relationship" imposes on the insurer a duty to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals there is a reasonable basis to do so. *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 568 (Tex.1990).

■ To prevail on a claim for breach of the duty of good faith and fair dealing, the insured must establish (1) the absence of a reasonable basis for denying payment under the policy, and (2) the insurer knew or should have known no reasonable basis existed for denying the claim. *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988); *Koral Indus., Inc. v. Security–Connecticut Life Ins. Co.,* 788 S.W.2d 136, 147 (Tex. App.—Dallas), *writ denied per curiam,* 802 S.W.2d 650 (Tex.1990). The first element of the test requires an objective determination of whether a reasonable insurer under similar circumstances would have denied the insured's claim. *Aranda,* 748 S.W.2d at 213. The second element requires the insured to establish either that (1) the insurer actually knew there was no reasonable basis to deny the claim, *or* (2) the insurer, based on its duty to investigate, *should have known* there was no reasonable basis for denying the claim. *Aranda,* 748 S.W.2d at 213. We determine whether an insurer had a reasonable basis for denying a claim by reviewing the facts before the insurer at the time the claim was denied. *See Viles,* 788 S.W.2d at 567. We conclude, based on the record before us, that fact issues exist on whether U.S. Fire conducted a reasonable investigation prior to denying Williams's claim. Likewise, we conclude, on the record before us, that fact issues exist on whether U.S. Fire had a reasonable basis for denying Williams's claim.

U.S. Fire concedes that, in making its decision to deny Williams's claim, it relied exclusively on its reading of Worker's Compensation Commission rule 132.3. Rule 132.3 states, in pertinent part, that:

A surviving spouse who abandoned the employee, without good cause for more than one year immediately preceding the death, shall be ineligible to receive death benefits. The surviving spouse shall be deemed to have abandoned the employee if the surviving spouse and the employee had

not been living in the same household for more than one year preceding the employee's death unless the spouse is:

(1) hospitalized;

(2) in a nursing home; or

(3) living apart due to career choices, military duty, or other reasons where it is established their separation is not due to the pending break-up of the marriage.

28 Tex.Admin.Code § 132.3 (West 1995) (Tex. Worker's Compensation Comm'n, Eligibility of Spouse to Receive Death Benefits). U.S. Fire contends that because Williams had not lived with Nathaniel for over a year immediately prior to his death, she was deemed to have abandoned him under the rule and, thus, was not entitled to benefits as a surviving spouse. Williams disagrees, noting that rule 132.3 only makes a surviving spouse ineligible for benefits if (1) the surviving spouse abandoned the employee, (2) without good cause, (3) for more than one year immediately preceding his death. Williams contends U.S. Fire failed to consider if all three conditions outlined in the rule were met and, thus, failed to conduct a sufficient investigation to justify denying her claim. We agree with Williams.

■ Rule 132.3 makes a surviving spouse ineligible for death benefits if three requirements are met: (1) the surviving spouse abandons the employee, (2) for a period of one year immediately preceding the employee's death, (3) without good cause. Although the latter portion of the rule provides a mechanism for "deeming" abandonment, it does not abrogate the other requirement of the rule; i.e., that the abandonment be without good cause. In this case, there was evidence that Williams and Nathaniel had lived apart for the year immediately preceding his death. Thus, under the rule, Williams was deemed to have abandoned Nathaniel. However, there was little, if any, information on whether good cause existed for the abandonment.

Ramsey testified that on May 28, 1992, fifteen days after Nathaniel's death, she knew there were two people claiming a right to death benefits under the policy. Five days later, on June 2, 1992, Ramsey concluded that Williams was not entitled to benefits. Ramsey testified her decision to deny Williams's claim for benefits was based on her review of the two recorded statements taken by Linda Perkins and Nathaniel's job application. The two recorded statements indicate that when Williams and Nathaniel separated, Nathaniel was the one that moved out first. Ramsey never attempted to determine the reasons for the separation, nor did she seek out any further information relating to the break-up of Williams and Nathaniel's marriage. Thus, Ramsey never attempted to determine whether good cause existed for the abandonment.[3]

■ In a bad faith case, the issue is whether there was evidence in existence before the insurer to justify denial of the claim, not whether the insurer correctly evaluated the evidence before it. See Rogers v. CIG-NA Ins. Co., 881 S.W.2d 177, 183 (Tex. App.—Houston [1st Dist.] 1994, no writ); State Farm Lloyds, Inc. v. Polasek, 847 S.W.2d 279, 285 (Tex.App.—San Antonio 1992, writ denied). In this case, U.S. Fire did not have sufficient evidence to determine whether rule 132.3 justified denying Williams's claim because U.S. Fire had no evidence before it indicating whether good cause existed for the abandonment.

Because U.S. Fire denied Williams's claim without ever attempting to obtain this information, we conclude that fact issues exist on whether U.S. Fire conducted a reasonable investigation before denying Williams's claim. Additionally, we conclude that because U.S. Fire had no information on the rule's good cause requirement, fact issues exist on whether rule 132.3 provided U.S. Fire with a reasonable basis for denying Williams's claim for benefits. We conclude the trial judge

---

**3.** Ramsey admitted during her deposition that she did not know the reasons for the separation. The only evidence relating to Nathaniel's reasons for separating from Williams was his statement to Lessie that "he just got sick and tired of every time he came home there was some other man around his house." Although this statement provides some insight into why *Nathaniel* might have left Williams, it does not address whether *Williams,* as the surviving spouse, had good cause to abandon the deceased, as required by rule 132.3.

erred in granting summary judgment in favor of U.S. Fire on Williams's claim for breach of the duty of good faith and fair dealing. We sustain Williams's first and second points of error.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In her third point of error, Williams contends the trial judge erred in granting summary judgment on her intentional infliction of emotional distress claim. Specifically, Williams contends the trial judge erred in granting summary judgment because fact issues exist on whether appellees' conduct in denying her claim was extreme and outrageous. We disagree.

To recover on a claim for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress suffered was severe. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). "Extreme" and "outrageous" conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Johnson*, 891 S.W.2d at 644.

Although Williams contends on appeal that fact issues existed on whether U.S. Fire's conduct in this case was extreme and outrageous, we disagree. In her brief, Williams contends the following conduct was extreme and outrageous: (1) U.S. Fire's refusal to consider her claim for benefits, (2) U.S. Fire's "unreasonable" denial of her claim, (3) U.S. Fire's failure to conduct a "thorough, fair, and honest" investigation into whether Williams was entitled to benefits, and (4) U.S. Fire's failure to consider Williams's warnings that Lessie was not entitled to benefits. We do not agree that this conduct *alone* can support a cause of action for intentional infliction of emotional distress.

The cause of action for intentional infliction of emotional distress was intended to provide a means of redress for victims of conduct that is determined to be *utterly intolerable in a civilized society*. *See Twyman*, 855 S.W.2d at 622. Thus, to recover on a claim for intentional infliction of emotional distress, the conduct complained of must be so outrageous and extreme in degree as to "go beyond all bounds of decency" and to be regarded as utterly atrocious. *See Johnson*, 891 S.W.2d at 644. We do not consider the conduct here complained-of to be of that character. We conclude the trial judge properly granted summary judgment in favor of U.S. Fire on Williams's claim for intentional infliction of emotional distress. We overrule Williams's third point of error.

We reverse the trial court's grant of summary judgment in favor of U.S. Fire on Williams's claim for breach of the duty of good faith and fair dealing. We remand that claim to the trial court for further proceedings. In all other respects, the trial court's judgment is affirmed.